IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MARGARET M. for JULIE H., Deceased**[1][2]

      Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

      Defendant.

**Civ. No. 3:19-cv-02019-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The issues before the Court are whether the Administrative Law Judge ("ALJ"): (1) erred in the evaluation of Plaintiff's testimony; and (2) gave clear and convincing reasons for failing to give treating and examining opinions substantial weight.

---

[1] Plaintiff passed away on February 5, 2021. Plaintiff's wife, Margaret M., has been substituted as the party in interest per 42 C.F.R. 404.503. *See* Pl.'s Mot. Subst. Party, ECF No. 15.

[2] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

Because the ALJ erred, and because the record as a whole reveals Plaintiff is disabled under the Act, the Commissioner's decision is REVERSED and this matter is remanded for an award of benefits.

## **PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff applied for DIB June 22, 2016, alleging disability since March 14, 2015. Tr. 82.[3] Her claim was denied initially on January 26, 2017, and upon reconsideration on March 31, 2017. Tr. 114–18, 124–26. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Rudolph M. Murgo on October 24, 2018. Tr. 128–9, 42. ALJ Murgo denied Plaintiff's claim by a written decision dated December 11, 2018. Tr. 18–41. Plaintiff sought review from the Appeals Council and was denied on November 27, 2019, rendering the ALJ's decision final. Tr. 179–83, 1–7. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 54 years old at the time of her alleged disability onset and 58 at the time of her hearing. Tr. 82, 45. Plaintiff has a master's degree in physical therapy and worked as a physical therapist for decades. Tr. 57; Pl.'s Br. 1, ECF No. 10. Plaintiff alleges disability due to depression, anxiety, ocular disfunction, survival of lung and breast cancer, loss of working memory, cognitive disfunction, and loss of short-term memory. Tr. 82–83.

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, No. 19-35774, 2021 WL 609825, at *1, (9th Cir. Feb. 17, 2021) (reaffirming the substantial

---

[3] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies their burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

**I. Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ failed to identify specific, clear and convincing reasons to reject Plaintiff's subjective symptom testimony. An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). When there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair*, 885 F.2d at 603). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040.

It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted). Though, "the mere fact that a claimant has carried on certain daily activities does not in any way detract from [their] credibility as to [their] overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ concluded Plaintiff suffered from the following severe impairments: depressive disorder, anxiety disorder, and neurocognitive disorder. Tr. 23. The ALJ found that despite those impairments, Plaintiff had the RFC to perform a full range of work at all exertional levels. Tr. 27. The ALJ included nonexertional limits for the avoidance of heights and limited Plaintiff to simple routine tasks that do not require extensive concentration, persistence, or pace. Tr. 27. In making this finding the ALJ determined:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the record because the claimant has been able to maintain many activities. Despite depression, anxiety, and a cognitive disorder, she volunteers one or two days a week. She remains active and social, as she goes to the community center for exercise classes. She can handle most daily activities

>independently. She volunteers at a food bank and through a church program that helps the homeless. She maintains a relationship with her wife, and she enjoys social activities with others. She attends church regularly. She enjoys golf.

Tr. 28 (internal citations omitted).

The ALJ's conclusion that Plaintiff was able to engage in many activities is not supported by Plaintiff's testimony and the record as a whole. The ALJ relied on Plaintiff's attendance at exercise classes at the community center, focusing on a treatment note from November 2016 that shows Plaintiff was going to Dishman Community Center for exercise. Tr. 878. Indeed, in March of 2017, Plaintiff told Dr. Benning during an office visit that she was doing aerobic exercise and light weights for one hour and noted that she had to rest after activities. Tr. 784. However, in August 2017, after Plaintiff's shoulder surgery, the record shows that Plaintiff had stopped going to exercise classes. Tr. 889. During her hearing, Plaintiff testified that she had not been to exercise classes in "awhile" and that her participation in them did not last a very long time. Tr. 64. The record makes only a few references to Plaintiff's attendance of exercise classes. Even then, her attendance spans less than a year. This hardly exhibits an ability to "maintain" the level of activity suggested by the ALJ. In fact, the record as a whole illustrates just the opposite. Plaintiff was unable to maintain this activity for any substantial period of time.

The ALJ also relied on Plaintiff's volunteer work to discount Plaintiff's testimony that she would need supervision to do a job that involved putting candies in a box. Tr. 50. Plaintiff testified that she volunteers at a food bank organized as a grocery store where she assists patrons as they get food from the shelves. Tr. 52. Plaintiff also testified that she volunteers with her brother-in-law, James M., at "Little Red Wagon" by helping distribute food in her local community. Tr. 56.

James M.'s' written statement supports Plaintiff's testimony. James M. stated Plaintiff assists him one to two times per month for a couple of hours. Tr. 286. He and Plaintiff stock a wagon and use it to take supplies to the homeless in their community. Tr. 286. He stated Plaintiff is unable to complete any tasks without supervision because she gets easily confused and has a difficult time staying on task. Tr. 286. James M. stated he must check on Plaintiff every five to ten minutes and often finds her doing something unrelated to what she had been directed to do. Tr. 286. In his statement, James M. noted that one-third of the time Plaintiff has a "bad day" and on these bad days Plaintiff becomes "discombobulated" and has poor stamina. Tr. 286. On these bad days, Plaintiff is unable to walk to the distribution points and must be driven. Tr. 286. On good days, James M. will pull the wagon as the pair walk to the distribution points, stopping every few blocks for breaks. Tr. 286. James M. also noted that Plaintiff gets slower as they go. Tr. 286.

Medical evidence also supports Plaintiff's testimony. Treatment notes indicated that Plaintiff had alternating attention and deficits in processing speed. Tr. 826. Treatment notes showed that Plaintiff's short-term memory and executive functioning skills negatively affected her ability to recall and process information, communicate, and follow through on activities. Tr. 826. Treatment notes also stated that Plaintiff required consistent maximal cues to plan and follow through on simple future events in structured environments. Tr. 824. Treatment notes from 2016 point out that Plaintiff always has direct supervision when volunteering. Tr. 878.

The ALJ found Plaintiff's ability to volunteer to be inconsistent with the alleged intensity, persistence, and limiting effects of Plaintiff's symptoms. Tr. 28. The ALJ found that Plaintiff was able to perform simple, routine tasks consistent with the RFC. Tr. 27. In making this finding, the ALJ failed to consider the actual tasks Plaintiff was doing or the conditions in which the tasks were

completed. The record as whole shows that Plaintiff is unable to participate in these volunteer activities without constant supervision and, even then, for only one or two days a week for a few hours at a time. While her desire to help others is admirable, Plaintiff's participation in volunteer work neither equates to a substantial portion of her days nor consists of functions transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Based on the above, Plaintiff's statements regarding her symptoms are consistent with her activities. The ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony.

## II. Opinion Evidence

Plaintiff argues that the ALJ erred in limiting the weight given to the opinions of Tamara Owen, PMHNP ("NP Owen") and Dr. Greg Reiter. Pl.'s Br. 13, ECF No. 10.

### A. Tamara Owen, PMHNP

NP Owen had provided her services as a mental health nurse practitioner to Plaintiff since November 2016. Tr. 805. Plaintiff continued seeing NP Owen for over a year and a half. Tr. 805. After regular interactions with Plaintiff for this extended period of time, NP Owen concluded that Plaintiff was incapable of working. Tr. 807. In 2018, NP Owen completed a Summary of Mental Health Care outlining her opinions regaarding Plaintiff's condition. Tr. 805–07. NP Owen noted that Plaintiff's memory was intact for some things but not for others. Tr. 807. NP Owen noted that Plaintiff experienced lapses in memory, had poor recall regarding a timeline of her prior history, and experienced high anxiety episodes when trying to remember basic information. Tr. 805. These statements regarding Plaintiff's memory impairments are supported throughout the record. In November 2016, NP Owen's treatment notes show Plaintiff was forgetting simple information throughout their appointment and could not remember to provide her email address even after

being reminded on three different occasions. Tr. 879. Treatment notes from February 2017 indicate that Plaintiff was having difficulty following directions and struggled to provide accurate information. Tr. 880. In July 2017, NP Owen noted that Plaintiff's memory was a "bit better." Tr. 888. However, even on this "good day," NP Owen noted that Plaintiff got so confused about which credit card to use for her copay that Plaintiff ultimately had to leave without paying. Tr. 888. NP Owen noted that Plaintiff would become flustered and anxious when pushed about her memory issues. Tr. 806. Plaintiff's memory impairments are supported by the hearing transcript itself. When asked about her education, Plaintiff could not remember where she went to high school; when asked about college, Plaintiff said she went to "University of Texas at San Antonio" for physical therapy. Tr. 48. However later in the hearing, the ALJ discovered that Plaintiff had actually gone to the University of Texas at Austin for her undergraduate studies and Baylor College of Medicine to study physical therapy. Tr. 57.

NP Owen's treatment notes illustrate how Plaintiff's condition varied over time. While Plaintiff seemed to be doing well in February 2018, a month later her condition had deteriorated. Tr. 806. NP Owen noted that Plaintiff had varying degrees of anxiety with each visit, shown by nervous laughter, hand fidgeting, and agitation. Tr. 806. NP Owen noted that Plaintiff was unable to shop alone and had issues with problem solving. Tr. 806. NP Owen pointed out that Plaintiff perseverated a lot and had to be told to redirect her thoughts to more calming things such as puppies. Tr. 806. NP Owen remarked that Plaintiff had direct supervision while she was volunteering. Tr. 807. James M. corroborated Plaintiff's need to be supervised during her volunteer activities. Tr. 286. NP Owen opined that Plaintiff's judgment and memory were not adequate to sustain work. . Tr. 807. NP Owen's opinion is supported by the vocational expert's testimony that

a worker who required supervision beyond the probationary period or who was found to be off-task twenty percent or more of the time would be unemployable in the national economy. Tr. 79, 74.

As a mental health nurse practitioner, NP Owen's opinion is considered an "other" medical source statement under the regulations that applied in this case. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ must provide a germane basis for discounting "other" medical source statements. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In giving NP Owen's opinion limited weight, the ALJ reasoned that the opinion was inconsistent with NP Owen's own treatment records; specifically, statements made by NP Owen that some areas of Plaintiff's memory were intact. Tr. 31. The ALJ noted that NP Owen's opinion was inconsistent with Plaintiff's ability to handle her daily activities such as volunteering. Tr. 31. The ALJ also said that Plaintiff's ability to read improved with treatment. Tr. 31. The ALJ also reasoned that NP Owen did not address whether the claimant could perform work consistent with the simple, routine tasks of the RFC. Tr. 32.

The ALJ failed to provide a germane reason for limiting the weight of NP Owen's opinion. Instead, the ALJ cherry-picked isolated instances of Plaintiff's improvement that are unsupported by the record as a whole. NP Owen worked with Plaintiff over the course of more than a year and a half and was bound to see her on both good and bad days. NP Owen's statements and treatment notes show Plaintiff experienced fluctuations in her symptoms over the course of treatment. However, NP Owen's opinion regarding Plaintiff's inability to work was consistent with her treatment records and the record as a whole and should have been accorded more weight. As noted above, Plaintiff's ability to occasionally volunteer under highly supervised conditions and her

sporadic attendance of exercise classes is not inconsistent with NP Owen's opinion. The ALJ erred in concluding that a few short-lived improvements in Plaintiff's symptoms undermined NP Owen's opinion.

### B. Dr. Greg Reiter

Plaintiff was referred to Dr. Reiter for a neurocognitive evaluation in May 2016 after complaining of memory issues. Tr. 572. Dr. Reiter conducted his examination of Plaintiff over the course of two separate days. Tr. 572. Plaintiff tested in the twenty-third percentile for working memory and the tenth percentile for processing speed. Tr. 574. Dr. Reiter noted that Plaintiff's difficulties in these areas supported the finding that Plaintiff experienced "not only intellectual deterioration but deterioration of memory and attention." Tr. 574. Additionally, Plaintiff participated in a series of other memory tests including the Logical Memory and Visual Reproduction Tests, all of which provided evidence that Plaintiff suffered from significant loss of memory. Tr. 574. When testing Plaintiff's ability to recall information, Dr. Reiter noted that after a thirty-minute delay, Plaintiff's ability to learn and retain information was "quite limited." Tr. 575. Dr. Reiter also found that Plaintiff's visual retention was "far below what would be expected of an individual with [Plaintiff's] level of education." Tr. 575. Dr. Reiter also administered several tests used to identify Plaintiff's executive functioning. Tr. 575. On all these tests Plaintiff's performance was consistently within the impaired range. Tr. 575. The "Wisconsin Card Sorting Test" and the "Trailmaking Test Part B" both had to be abandoned after Plaintiff was unable to understand instructions which had been explained to her multiple times. Tr. 575. Dr. Reiter noted that during a "clock drawing exercise," in which Plaintiff was asked to draw a clock pointing to 9:45, the quality of Plaintiff's clock "could best be described as very poor." Tr. 575. Dr. Reiter

went on to note that the results of Plaintiff's testing suggested a serious impairment of auditory and visual memory. Tr. 576. Dr. Reiter also noted that there was evidence that suggested Plaintiff had intellectual deterioration, including deterioration of problem-solving abilities. Tr. 576. Ultimately, Dr. Reiter determined that the results of his evaluation of Plaintiff suggested a "high likelihood that [Plaintiff] will not be able to return to any type of employment." Tr. 576.

An ALJ must weigh the following factors when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6). "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id*. Here, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence to properly reject Dr. Reiter's opinion. *See Bayliss*, 427 F.3d at 1216 (citation omitted).

The ALJ decided to limit the weight given to Dr. Reiter's opinion, finding that it did not consider Plaintiff's ability to volunteer, handle household activities, or her pursuit of a routine through exercise classes and golf. Tr. 32. However, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to limit Dr. Reiter's opinion. Here, just as

with his evaluation of NP Owen's opinion, the ALJ cherry-picked isolated activities and instances of Plaintiff's improvement rather than looking to the record as a whole. After spending two days with Plaintiff and running a full battery of tests, Dr. Reiter determined that Plaintiff was unable to return to any type of employment. Tr. 576. This determination was based on objective data that Dr. Reiter gained through a number of tests designed to reveal a patient's cognitive baseline. This test data indicated that Plaintiff had difficulty with memory, following instructions, and problem solving. These findings are supported by treatment notes and hearing testimony throughout the record that show Plaintiff had lapses in memory causing her to forget even the simplest forms of information. *See* tr. 48, 57, 805, 879, 880, 888. The fact that Plaintiff had the ability to periodically volunteer with constant supervision or sporadically attend exercise classes did not conflict with Dr. Reiter's findings that Plaintiff suffered from a serious impairment of memory with accompanying intellectual deterioration. The ALJ erred by not providing specific and legitimate reasons supported by substantial evidence to limit the weight given to Dr. Reiter's opinion.

### III. The Credit-as-True Doctrine

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.

1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

This is a rare instance where remand for an award of benefits is appropriate. Here, Plaintiff satisfies all three requirements. The record is fully developed and there are no ambiguities that further administrative proceedings need resolve. As explained above, the ALJ failed to provide sufficient reasons for limiting Plaintiff's statements and the opinions of NP Owen and Dr. Reiter. Credited as true, Plaintiff's testimony, the opinions of both NP Owen and Dr. Reiter, and the vocational expert's testimony establish that Plaintiff is disabled under the Act. The vocational expert testified that a worker who required supervision beyond a probationary period would be unemployable in the national economy. Tr. 79. Because of Plaintiff's memory deficiencies and her need for constant supervision, Plaintiff is disabled under the Act. *See* Tr. 50, 286, 572–76, 805–07. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is REVERSED and this matter is REMANDED for calculation and award of benefits. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

DATED this 23rd day of March, 2021.

                                              s/ Michael J. McShane
                                              Michael J. McShane
                                              United States District Judge